# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Sandra Rachuy,                                    Civil No. 08-1188 (DWF/RLE)

        Plaintiff,

v.                                                **MEMORANDUM**
                                                  **OPINION AND ORDER**

Anchor Bank, individually and as a Minnesota
Corporation; Kristie Shafer, individually and in
her official capacity as an employee of Anchor
Bank; Joyce Maddox, individually and in her
official capacity as an employee of Anchor Bank;
Donald Kottke, individually and in his official
capacity as an employee of Anchor Bank; and
Denise Nelson, individually and in her official
capacity as an employee of Anchor Bank,

        Defendants.

---

Sandra Rachuy, *Pro Se*, Plaintiff.

Alan I. Silver, Esq., and Jessica Schulte Williams, Esq., Bassford Remele, counsel for
Defendants.

---

## INTRODUCTION

This matter is before the Court upon a Motion for Summary Judgment brought by

Defendants Anchor Bank (the "Bank"), Kristie Shafer ("Shafer"), Joyce Maddox, Donald

Kottke and Denise Nelson (together, the "Defendants"). For the reasons set forth below,

the Court grants the motion.

# BACKGROUND

On October 12, 2005, Plaintiff Sandra Rachuy ("Plaintiff") and her husband Gale Rachuy ("Rachuy") opened a joint account at the Bank. On November 14, 2005, Rachuy deposited two checks into the account, one for $62,836.49 and another for $35,000. Plaintiff and Rachuy used their debit cards and wrote a number of checks drawing upon the deposited funds. Subsequently, the Bank learned that the checks Rachuy had deposited were counterfeit. Bank employee Shafer investigated the matter by doing an Internet search and obtaining credit reports for both Plaintiff and Rachuy. The Bank learned that Rachuy had a criminal history related to fraudulent financial transactions. After this investigation, the Bank closed the debit cards associated with the account and placed the account on restricted status. Rachuy then deposited another check for almost $10,000 into the account and assured the Bank that he had confirmed that the check was valid. The Bank learned, however, that this third check also was a counterfeit.

Additionally, the Bank received a wire transfer for $22,500 directed to Rachuy. The funds transferred were related to a contract between an individual, James Tickler, and Rachuy that involved the purchase of wood. At the time the funds were transferred, the account was frozen and, therefore, though the funds were deposited in the account, they were never available for withdrawal. Tickler became suspicious about the transaction with Rachuy and requested that the wire transfer be reversed. The Bank retained a portion of the funds to cover Plaintiff and Rachuy's account deficit and returned the remainder of the funds.

The Bank informed the police about the counterfeit checks and the wire transfer. The Bank also submitted a Suspicious Activity Report ("SAR") to the Comptroller of the Currency. Ultimately, Rachuy was charged with and convicted of three counts of offering a forged check and was sentenced to prison.[1]

Rachuy sued Anchor Bank in state court in Hennepin County, Minnesota, in January 2007. Rachuy asserted claims against the Bank related to its alleged wrongful failure to honor checks written on the account. Rachuy also claimed that employees of the Bank conspired with prosecutors in Rachuy's criminal cases. The Bank obtained summary judgment in the state court case; among other things, the court found that Rachuy's claims were barred by collateral estoppel because he had been found guilty of offering a forged check in connection with the funds upon which he intended to draw. The state court entered a judgment in favor of the Bank.

In this case, Plaintiff claims that the Bank wrongfully dishonored checks written against funds in the account and converted a portion of the funds from the wire transfer by applying them to the account deficit. As a result, Plaintiff claims she sustained harm in that she was evicted and her furniture repossessed. Plaintiff further contends that the Bank violated the Fair Credit Reporting Act ("FCRA") by obtaining her credit report. Plaintiff also claims that the Bank defamed her by submitting the SAR and breached her right of privacy and confidentiality.

---

[1]     Rachuy was also charged with and found guilty of wire fraud relating to the Tickler transaction, but the state court hearing his criminal case vacated the jury's verdict as to this count.

## DISCUSSION

Defendants contend they are entitled to summary judgment.  First, Defendants contend that the doctrine of *res judicata* bars Plaintiff from litigating her claims relating to any dishonored checks and the wire transfer.  Second, Defendants argue the Bank was authorized to obtain Plaintiff's credit report.  Finally, Defendants argue that they are protected from suit for their submission of the SAR because they were reporting illegal activity to law enforcement.

## I.    Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.,* 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank,* 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th

Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

## II.   *Res Judicata*

"The doctrine of *res judicata* applies to repetitive suits involving the same cause of action."  *Lundquist v. Rice Mem'l Hosp.,* 238 F.3d 975, 977 (8th Cir. 2001). *Res judicata* precludes the relitigation of claims rather than the relitigation of specific issues, which is barred by the doctrine of collateral estoppel.  *Canady v. Allstate Ins. Co.,* 282 F.3d 1005, 1014 (8th Cir. 2002).  *Res judicata*, therefore, bars litigants from bringing claims on grounds that were raised or could have been raised when:  (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was a final judgment on the merits; and (3) both cases involved the same cause of action and the same parties or their privies.  *Banks v. Int'l Union Elec., Elec., Tech., Salaried and Machine Workers,* 390 F.3d 1049, 1052 (8th Cir. 2004); *Canady,* 282 F.3d at 1014.  A claim is barred by *res judicata* if it arises out of the same nucleus of operative facts as the prior claim.  *Banks,* 390 F.3d at 1052.

The Court agrees with Defendants that Plaintiff's claims are barred by *res judicata*.  Plaintiff claims that the Bank wrongfully dishonored checks and converted

a portion of the funds received by wire transfer.[2]  The state court in Hennepin County

entered summary judgment in favor of the Bank with respect to essentially identical

claims brought by Rachuy.  Plaintiff's claims, therefore, arise from the same nucleus of

operative facts as the claims litigated in the Hennepin County case.  That court was a

court of competent jurisdiction, and its grant of summary judgment and subsequent entry

of judgment in favor of the Bank was a final adjudication on the merits.

Further, the Court concludes that the case involved the same cause of action and

the same parties or their privies.  Under Minnesota law, husbands and wives are not in

privity with each other for the purposes of *res judicata* solely because they are married.

*Deli v. Hasselmo*, 542 N.W.2d 649, 656 (Minn. Ct. App. 1996) (finding collateral

estoppel did not bar wife's state data practices act suit based on public statements made

about her employment because wife was not in privity with husband with respect to

husband's previous suit under the same law and regarding some of the same statements).

Plaintiff and Rachuy, however, stand in the same position with respect to the state court

suit and the present action.  Plaintiff's claims stem from her status as a joint account

holder with Rachuy and her assertion that she has some rights to the funds in the account

also arises from that status.  Rachuy's identical claims also arise from his status as a

---

[2]      The counterfeit nature of the checks was established by Rachuy's criminal
convictions for offering forged checks.  As the deposits were fraudulent, it was not
wrongful for the Bank to refuse to honor checks written in order to draw down those
funds.

holder on the account and his alleged entitlement to the funds.[3]  Therefore, Plaintiff was

in privity with Rachuy with respect to the state court litigation.[4]

The Court also concludes that the Bank and its employees are privies for

*res judicata* purposes.  Employers and employees do not always stand in privity with

each other.  *Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 903-904 (Minn. 1984)

(concluding firefighters were not in privity with employing city where firefighters

asserted different and broader claims that those previously brought by city).  In this case,

however, the employees are sued for actions they took in connection with their

employment and regarding an account with the Bank.  The Bank's defenses in the state

court litigation were based on the acts of its employees, and the Bank's defense of itself

in the state court litigation necessarily included a defense of the actions of its employees.

The Court concludes that *res judicata* bars Plaintiff from re-litigating claims

asserted by Rachuy in the state court action.  Therefore, the Court grants Defendants'

---

[3]    Rachuy framed his claims differently in the state court action, but the core of the
claims is the same.

[4]    There are some indications that Rachuy is the real party in interest in this litigation
as well.  For instance, the Complaint appears to have been written asserting allegations
relating to Rachuy; often Plaintiff's name has been inserted in handwriting and the word
"his" is repeatedly crossed out and replaced with "her."  (Compl. ¶¶ 4, 6, 12, 32.)
Rachuy attempted to intervene in this case and, though his motion to intervene was
denied, Rachuy subsequently filed additional papers with the Court styling himself as an
intervenor.  Further, Plaintiff's untimely response to the present motion includes the
assertion that employees of the Bank conspired with prosecutors, an allegation also raised
by Rachuy in the state court action.  Additionally, Rachuy attempted unsuccessfully to
amend his complaint in the state court action to assert claims raised here by the Plaintiff.

request for summary judgment as to Plaintiff's claims of wrongful dishonor and

conversion and for any consequential damages arising from those claims.

## III.  FCRA

The FCRA permits a party to obtain a credit report regarding a consumer if done

so for a permissible purpose.  15 U.S.C. § 1681b(a).  One permissible purpose identified

by the statute is that the party requesting the report:

> [O]therwise has a legitimate business need for the information –
> (i) in connection with a business transaction that is initiated by the
> consumer; or
>
> (ii) to review an account to determine whether the consumer continues to
> meet the terms of the account.

15 U.S.C. § 1681b(a)(3)(F).

The Court concludes that the Bank had a legitimate need to access Plaintiff's

credit report.[5]  Plaintiff was a joint account holder with respect to an account in which

Rachuy deposited over $100,000 in counterfeit checks, which funds were also drawn

down leaving the account with a deficit.  The Bank had a legitimate business need to

determine whether Plaintiff and Rachuy should be prohibited from making additional

deposits and withdrawing funds and whether the account should be closed.  *See*

*Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263 (D. Md. 1992)

---

[5]     The Bank also argues that it was entitled to draw credit reports for Plaintiff and
Rachuy because the account application they signed grants the Bank permission to obtain
a credit report.  Plaintiff argues that the grant of permission only applied to a report
drawn in connection with opening the account and not to a report obtained under other,
later circumstances.  The Court determines that it need not address this issue because the
Bank so clearly had a legitimate business need to obtain a credit report due to the deposit
of counterfeit checks in the account.

(title insurance company had a dire and legitimate need to draw credit report regarding title agent to determine whether agent had misappropriated funds in escrow account leaving $1.3 million shortfall).  This is a determination regarding whether a bank customer continues to meet the terms of the account.  Therefore, the Court grants Defendants' motion with respect to Plaintiff's claims regarding the draw of her credit report.

## IV.    Claims Related to the SAR

Plaintiff claims that Defendants defamed her by submitting a SAR to the relevant authorities.  According to Plaintiff, the SAR defamed her by indicating that she and Rachuy were suspected of depositing counterfeit checks and wire fraud.  Additionally, Plaintiff claims that the Defendants breached her right to privacy and confidentiality by reporting suspicious activity to the authorities.  Defendants contend that their report of suspected illegal activity cannot be the basis of liability.  The Court agrees with Defendants.

The elements of defamation are:  (1) a false and defamatory statement about the plaintiff; (2) publication of that statement to a third party; and (3) harm to the plaintiff's reputation.  *Weinberger v. Maplewood Review,* 668 N.W.2d 667, 673 (Minn. 2003).  The truth of a statement is an absolute defense to a defamation claim.  *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980).  Rachuy was convicted of depositing three counterfeit checks into the joint account, upon which funds were drawn leaving a negative balance.  To the extent that the SAR stated that counterfeit checks had been

deposited and the funds drawn down, the Bank reported true information to law enforcement and banking authorities.

Further, banks are shielded from liability for reporting customer information to law enforcement and regulatory authorities when they report suspected illegal activity. Minnesota law limits the information financial institutions may provide to government authorities, but expressly exempts from these limitations a financial institution's report of a possible violation of law.  Minn. Stat. §§ 13A.02, 13A.04.  In addition, Minnesota law provides that "[a]n individual who in good faith seeks assistance from, or reports apparent unlawful conduct to, law enforcement is not liable for civil damages as a result of that action."  Minn. Stat. § 604A.34.  Federal law also grants broad protection to a financial institution or an employee of such an institution that reports any "possible violation of law or regulation to a government agency."  31 U.S.C. § 5318(g)(3)(A).  That section shields the reporter from civil liability under any federal or state law or regulation, as well as under any contract or other "legally enforceable agreement."  *Id*.

The Defendants' conduct falls well within the parameters of these protections. Therefore, the Court concludes no liability arose from the Bank's report of suspected illegal activity to law enforcement and other authorities.  The Court grants the Defendants' motion with respect to Plaintiff's defamation and breach of privacy and confidentiality claims.

## CONCLUSION

The Court grants Defendants' Motion for Summary Judgment.  Further, the Court specifically and expressly finds that Plaintiff's claims asserted in this case are frivolous.

Therefore, Plaintiff's claims will be dismissed in their entirety and judgment entered in favor of the Bank.

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 42) is **GRANTED**.

2.    Plaintiff's Complaint (Doc. No. 1, Attach. 1) is **DISMISSED** in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  February 17, 2009                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             Judge of United States District Court